UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIANE RETTA BOLLON,

       Plaintiff,                       CIVIL ACTION NO. 09-15035

       v.                                DISTRICT JUDGE ANNA DIGGS TAYLOR

COMMISSIONER OF                MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I.    PROCEDURAL HISTORY**

     *A.    Proceedings in this Court*

On December 30, 2009, Plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability insurance benefits (Dkt. No. 2). This matter is currently before the Court on cross-motions for summary judgment (Dkt. Nos. 12, 13).

     *B.    Administrative Proceedings*

Plaintiff filed the instant claims on February 6, 2007, alleging that she became unable to work on November 15, 1988, due to injuries sustained from a hunting accident gunshot wound (Tr. 149-

152 ). Plaintiff's "date last insured" was December 31, 1993 (Tr. 11).[1] The claim was initially disapproved by the Commissioner on March 28, 2007 (Tr. 93-97). Plaintiff requested a hearing and on February 12, 2009, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Ayrie Moore, who considered the case *de novo*. In a decision dated June 2, 2009, the ALJ found that Plaintiff was not disabled (Tr. 8-18). Plaintiff requested a review of this decision on July 31, 2009 (Tr. 4-7). The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on November 3, 2009, denied Plaintiff's request for review (Tr. 1-3).

In light of the entire record in this case, I find that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II. STATEMENT OF FACTS

### A. *ALJ Findings*

Plaintiff was 30 years old on the date she was last insured (*i.e.*, December 31, 1993) (Tr. 11, 17). Plaintiff has past relevant work as a punch press operator, an assembler and a hand packer (Tr. 17). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in any substantial gainful activity during the period from her alleged onset date (November 15, 1988) through her date last insured (December 31, 1993) (Tr. 13). At step two,

---

[1] To be eligible for disability insurance benefits, a claimant must be "insured for disability insurance benefits." 42 U.S.C. §§ 423(a)(1)(A), 423(c)(1); *see also* 20 C.F.R. § 404.315(a). To have "disability insured status" during any quarter, an individual must be fully insured in that quarter and have at least twenty quarters of coverage in the last forty-quarter period ending with that quarter. 20 C.F.R. § 404.130(b). The expiration of a claimant's insured status is also known as the "date last insured." Plaintiff's date last insured was December 31, 1993 (Tr. 154). *See* 42 U.S.C. §§ 423(a)(1)(A), 423(c)(1). Therefore, the time-period at issue in the present case is November 15, 1988 – December 31, 1993.

the ALJ found that Plaintiff had the following "severe" impairment: gunshot wound to the left arm in 1988, with residuals. *Id.* At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. *Id.* Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform "light work...except [Plaintiff] could not use her left arm for light lifting or overhead reaching; and she could only occasionally use her left arm for handling and fingering" (Tr. 13-14). At step four, the ALJ found that Plaintiff could not perform her previous work as a punch press operator, an assembler or a hand packer (Tr. 17). At step five, the ALJ denied Plaintiff benefits, because the ALJ found that Plaintiff could perform a significant number of jobs available in the national economy, such as self-service sales attendant, usher, messenger, or low-volume cashier (Tr. 18).

### B. Administrative Record

#### 1. Plaintiff's Testimony and Statements

Plaintiff was 25 years old at the time of the 1988 hunting accident and lived with her husband and then-four-month-old child (Tr. 61-62). Plaintiff had a second child in 1990 (Tr. 62). She testified that she had "no movement" in her left arm for one year after the injury (Tr. 65) and did not regain use of her arm until two years after the accident (Tr. 70). Plaintiff also testified that the medications she took caused side effects such as dizziness and nausea for about 1-2 hours after taking them (Tr. 72), and impaired her concentration (Tr. 75, 80). She had difficulty sleeping (Tr. 78). She felt that she "probably could have" still done a simple job where she did not have to use her left arm, but she was "taking medication and felt nauseous a lot and sick a lot" and "just stayed home to be with [her] kids" (Tr. 75).

The gunshot wound was to Plaintiff's non-dominant arm; Plaintiff testified that she was able to drive (Tr. 63), care for and pick up her baby (Tr. 73-74), play with her kids (Tr. 80) and do the dishes and other housework by relying more on her right arm (Tr. 79), though she also had help from family members (Tr. 70-71, 78-79). The only restriction Plaintiff testified that doctors had given her with respect to her left arm was "to use it as [she] was able to" (Tr. 76). The injury did not affect Plaintiff's ability to sit, stand, or walk, and did not affect her legs or feet (Tr. 74).

### 2. Medical Evidence

On November 15, 1998, Dr. Greg Doss, D.O., treated Plaintiff at Port Huron Hospital for a gunshot wound to her left arm sustained in a hunting accident (Tr. 233-37). The gunshot had caused a displaced fracture of her upper left arm, along with entry and exit wounds in her left arm and shoulder (Tr. 234). After surgery to repair the injury, Dr. Doss noted that Plaintiff had some swelling, numbness in her hand, good extension in her fingers, and limited extension in her wrist (Tr. 234). Plaintiff was discharged on November 20, 1998, with instructions to return to have dressings changed and for any necessary therapy (Tr. 234).

No further contemporaneous medical evidence exists for the period between Plaintiff's discharge and December 31, 1993, Plaintiff's date last insured. Dr. Doss subsequently indicated that he had no records from this period pertaining to Plaintiff (Tr. 198; *see also* Tr. 68 (ALJ noting that Dr. Doss had stated "that there were no records except the hospitalization records, that all the other records were after, long after the date last insured.")).

In 2006, Dr. Doss treated Plaintiff for a left thumb injury, but Plaintiff did not list any complaints about her left arm (*see* Tr. 215-17). She returned to Dr. Doss in February 2007, with complaints of pain and weakness in her left arm and shoulder (Tr. 214). Dr. Doss noted that Plaintiff

had received "no treatment to [that] point" since sustaining the gunshot wound "18 years" before (Tr. 214). The range of motion in her left elbow and shoulder was limited, but she was otherwise neurologically intact (Tr. 214).

On June 7, 2007, Dr. Nick Reina performed a consultative evaluation at the request of Plaintiff's attorney (Tr. 206). Plaintiff had 4+/5 strength in her left arm, some limitations in her left shoulder range of motion, pain in her left elbow at full extension, and intact sensation (Tr. 206). He also treated her periodically in 2007 and 2008 for arm pain and unrelated complaints (Tr. 207-08, 226-31).

In March 2009, Dr. Doss wrote a letter describing Plaintiff's range of motion as he had observed it at an appointment in February 2009, and opined that Plaintiff could "participate with limited activities in regard to her left upper extremity" (Tr. 239). He also opined that she was "unemployable in this job market" (Tr. 239). In a subsequent letter, he indicated that he had reviewed his November 1988 treatment notes (Tr. 241). Dr. Doss opined that she would have been "unable to work utilizing both upper extremities at that time," due to the gunshot wound, but "would have been able to work" with restrictions to "limited favoring activity including no significant lifting, pushing, or pulling" (Tr. 241). He further opined that her residual impairment "would have existed from the date of the injury to present" (Tr. 241).

### 3. Vocational Expert

During the hearing, the ALJ asked a Vocational Expert (VE) to consider a hypothetical claimant with Plaintiff's vocational characteristics who had a residual functional capacity ("RFC") to perform light work, and could occasionally use her left arm for handling and fingering, but not for overhead reaching or light lifting (Tr. 87). The VE testified that the hypothetical claimant could

not return to Plaintiff's past relevant work, but could perform a significant number of other jobs (Tr. 88-89).

## III. DISCUSSION

### A. *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc.*

*Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the

Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B. *Governing Law*

The "[c]laimant bears the burden of proving her entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> Inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past

relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

### C.     *Analysis and Conclusions*

Plaintiff's overarching argument on appeal is that the decision of the ALJ is not supported by substantial evidence, and should be overturned. A claimant must "establish that [she] became 'disabled'" prior to her date last insured, *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) (citing *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (same)). Defendant responds that the ALJ reasonably found that Plaintiff failed to meet her burden to show disability (Tr. 15). Defendant's argument is well-taken. As the ALJ discussed, "there is no medical evidence related to the period on or before the date last insured, and no contemporaneous evidence from that period to establish that [Plaintiff] was unable to use her left arm during the relevant time period" (Tr. 15). Even the statements by Plaintiff's treating physician, Dr. Doss – made nearly 15 years after Plaintiff's date last insured – supported the conclusion that Plaintiff "only had some limitations in her left arm," consistent with the ALJ's RFC finding (Tr. 16). The ALJ's conclusions are well supported by the record.

In 2007, Dr. Doss reported to the Agency that he had no treatment notes for the period between Plaintiff's 1988 alleged onset date and Plaintiff's 1993 date last insured (Tr. 198). Even when Plaintiff finally returned to Dr. Doss for medical care in October 2006 – 13 years after her date

last insured – it was for an injury to her left thumb that she received building a rabbit cage (Tr. 217). She had no complaints about her left arm (*see* Tr. 215-17). Not until February 2007 did Plaintiff seek treatment for her left arm (Tr. 214). As Dr. Doss recorded in his treatment notes at that appointment, Plaintiff had received "no treatment to [that] point" for her left arm since sustaining the gunshot wound "18 years" before (Tr. 214).

Defendant correctly notes that Plaintiff does not dispute Dr. Doss's statement or the ALJ's statement that there is no medical evidence between Plaintiff's 1988 discharge and her 1993 date last insured. Instead, Plaintiff argues only that the ALJ "erred in looking for specific medical findings" and "summarily concluded" that she was not fully credible. *See* Pl.'s Br. at 6, 8-9. However, the absence of any record of medical treatment during Plaintiff's insured period supports the ALJ's conclusion that, despite her claims of disability and "unremitting pain" (Pl.'s Br. at 9), Plaintiff failed to meet her burden of establishing disability prior to her date last insured. *Moon*, 923 F.2d at 1182 (lack of evidence in the record countered claimant's allegations of disabling impairments); *see also Crouch v. Sec'y of Health & Human Servs.*, 909 F.2d 852, 857 (6th Cir. 1990).

Plaintiff further argues that her medical condition arose in November 1988 and that any issues with her left arm that the consulting physician observed in 2007 must be attributed to that incident, in the absence of other evidence of trauma. *See* Pl.'s Br. at 9. Plaintiff also indirectly argues that the ALJ did not properly weigh what little medical evidence appeared in the record. *Id.* at 9. She briefly cites a 2007 consultative examination that her attorney scheduled with a doctor who had never previously treated Plaintiff. *See id.* (citing Tr. 206). Defendant responds that Plaintiff's arguments fail to address her burden under the Act, the medical evidence from her treating physician, Dr. Doss, or, most importantly, the ALJ's reasonable conclusions. Defendant is correct.

-11-

First, the ALJ did not implicitly attribute Plaintiff's left arm impairment to "some evidence of later trauma," as Plaintiff's brief suggests. *See* Pl.'s Br. at 9. The ALJ agreed that the 1988 gunshot wound caused her left arm impairment (Tr. 13 ("gunshot wound to the left arm in 1988, with residuals" was found to be a "severe impairment")). Furthermore, the ALJ included significant functional limitations in her RFC finding to account for that condition (Tr. 13-14).

Furthermore, Dr. Doss treated Plaintiff's left arm after her injury in 1988 (Tr. 233-37) and again in 2007 (Tr. 214). As the ALJ discussed, Dr. Doss subsequently provided two letters in March 2009 discussing Plaintiff's condition (Tr. 15). In the first letter, he described Plaintiff's range of motion in 2007 and opined that Plaintiff could then "participate with limited activities in regard to her left upper extremity" (Tr. 239). Notably, even at the time he wrote this first letter in 2009, Dr. Doss did not opine that Plaintiff could not participate in *any* work activities, or even that her impairment precluded all activities with her left arm (*see* Tr. 16 (ALJ noting same)).

Dr. Doss provided an opinion about Plaintiff's pre-date last insured functional capacity in his second letter (Tr. 241), which the ALJ also discussed (Tr. 15-16). In that second letter, Dr. Doss indicated that he had reviewed his November 1998 treatment notes and opined that Plaintiff "would have been able to work" with restrictions to "limited favoring activity" with her left arm "including no significant lifting, pushing, or pulling" (Tr. 241). As the ALJ correctly summarized, these "two letters actually seem to confirm that [Plaintiff] had some limited use of her left arm," contradicting Plaintiff's argument that she could not use that arm at all for much of that period (Tr. 15-16). The ALJ specifically stated that she had accommodated Dr. Doss's opinions in her RFC finding, even though he made these findings well after Plaintiff's date last insured (Tr. 15-16). In sum, Dr. Doss's letters and the nearly two-decade gap in Plaintiff's treatment for her left arm fully support the ALJ's

conclusion that Plaintiff had not demonstrated a disabling impairment prior to the expiration of her insured status in 1993 (Tr. 18), and I find that the ALJ's decision is supported by substantial evidence.

Plaintiff also disagrees with the ALJ's credibility determination. This court does not make its own credibility determinations. *See Lawson v. Comm'r*, 192 Fed. App'x 521, 528 (6th Cir. 2006). The court cannot substitute its own credibility determination for the ALJ's. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed ...." *Kuhn v. Comm'r*, 124 Fed. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Comm'r*, 152 Fed. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r*, 336 F.3d 469, 476 (6th Cir. 2003); *see also Cruse v. Comm'r*, 502 F.3d 532, 542 (6th Cir. 2007). "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "Since the ALJ has the opportunity to observe the demeanor of the witness, [her]conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993). In this case, the ALJ's decision complies with the above cited authorities, by discussing Plaintiff's testimony about her

symptoms and limitations, and articulating several specific grounds for finding Plaintiff less than credible.

In particular, the ALJ found that Plaintiff's allegations about the extent of her pain and limitation were inconsistent with not only Dr. Doss's opinions but Plaintiff's own testimony about her abilities (Tr. 16). As the ALJ discussed in detail, despite receiving some unspecified help from family members and going through physical therapy, Plaintiff testified that she got pregnant, had a second child (Tr. 70), was able to drive (Tr. 63), cared for and picked up her baby (Tr. 73-74), played with her kids (Tr. 80), and did dishes and other housework by relying more on her right arm than her left (Tr. 79). Plaintiff also testified that the only restriction doctors had given her with respect to her left arm was "to use it as [she] was able to" (Tr. 76). The injury did not affect her ability to sit, stand, or walk, and did not affect her legs or feet (Tr. 74). Notwithstanding the lack of objective evidence or medical treatment, the ALJ found these stated activities did not comport with allegedly disabling pain and limitation (Tr. 16).

In another example, Plaintiff emphasizes in her brief that she testified to "no movement" in her left arm or fingers and an inability to use that arm "at all" for one year after her injury. (Pl.'s Br. at 12-13 (citing Tr. 65)). However, Plaintiff omits her later testimony that she began regaining use of her fingers, beginning with "one finger just a little bit," eight months after her injury (Tr. 70). Regardless, Dr. Doss's treatment notes after surgery contradict both of these claims. He recorded that after surgery Plaintiff had "active extension of the fingers" (Tr. 234). As the ALJ discussed, Dr. Doss's opinions also suggested Plaintiff "only had some limitations in her left arm," even as late as 2009. The ALJ incorporated those credible limitations into her RFC finding (Tr. 16). Simply put, the ALJ's decision not to fully credit Plaintiff's testimony, and to find that the record did not

demonstrate that Plaintiff was disabled prior to her date last insured, was supported by substantial evidence.

In sum, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED** and that the findings and conclusions of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless,

by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                        s/Mark A. Randon
                                        MARK A. RANDON
                                        UNITED STATES MAGISTRATE JUDGE

Dated: October 8, 2010

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, October 8, 2010, by electronic and/or first class U.S. mail.*

                                        *s/Melody R. Miles*
                                        *Case Manager to Magistrate Judge Mark A. Randon*
                                        *(313) 234-5542*